# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**ANDREW L. RICE,** *et al.*,

    **Plaintiffs,**

v.

**THE VILLAGE OF JOHNSTOWN, OHIO,**

    **Defendant.**

Case No. 2:19-cv-504
JUDGE GEORGE C. SMITH
Magistrate Judge Vascura

## OPINION AND ORDER

This matter is before the Court upon Defendant the Village of Johnstown, Ohio's (the "Defendant" or "Johnstown") Motion to Dismiss (Doc. 6). Plaintiffs filed a Response (Doc. 8) and Johnstown filed a Reply (Doc. 9). The Motion is ripe for review. For the following reasons, Defendant's Motion to Dismiss is **DENIED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

In 2017, the Rice family sold an 80-acre parcel of land (the "Parcel") to Wilcox Investment Group, LLC (hereinafter "Wilcox"). (Doc. 1, Compl. at ¶¶ 18–19). Wilcox intended to create a residential development on the Parcel. (*Id*. at ¶ 19). To do this, Wilcox needed to have Johnstown annex the land and re-zone the property as a "planned unit development" ("PUD"). (*Id*. at ¶ 21).

Johnstown, pursuant to its town charter, has a Planning and Zoning Commission (the "Commission"), which is vested with

> the power and duty to hear applications for land use, zoning classifications or districts and, as merited, to submit written recommendations for legislative action or to render final determinations for administrative action; to initiate, review and recommend legislation, rules and regulations on all matters of municipal planning, land use, and zoning classification; and to exercise such other powers, duties and functions as provided by Council.

Johnstown Charter, Section 7.03(b).[1] The Commission is responsible for reviewing and issuing preliminary approval or denial of PUDs. According to the town charter, the Commission shall be comprised of "five electors of [Johnstown] who shall serve overlapping four-year terms; one of which may be a Council member who shall serve at the pleasure of Council; and one of which may be a representative of the Johnstown-Monroe Board of Education." Johnstown Charter, Section 7.03(a). The town charter appears to give the Council the power to appoint and remove the members of the Commission. *See* Johnstown Charter, Section 7.02(b)–(c).

When an application for a PUD is submitted to the Commission, it reviews the application to "determine if [the application] is consistent with the intent and purpose of th[e] Zoning Ordinance; whether the proposed development advances the general welfare of the community and neighborhood; and whether the benefits, combination of various land uses, and the surrounding area justify the deviation from standard district." Johnstown Code of Ordinances 1179.02. After an application is submitted, the Commission reviews the application "to determine if it is consistent with the intent and purpose of th[e] Zoning Ordinance; whether the proposed development advances the general welfare of the community and neighborhood; and whether the benefits, combination of various land uses, and the surrounding area justify the deviation from standard district." Johnstown Ordinance, Section 1179.02(a). After this review, the Commission "shall issue a preliminary recommendation of approval in principle, approval in principle with modifications or conditions, or recommended disapproval of the application." *Id*.

Importantly, Plaintiffs allege that this was not the role the Commission played when Plaintiffs submitted their PUD application. Instead, Plaintiffs allege that the Commission had ultimate power to reject PUD applications without any Council review. (Doc. 1, Compl. at ¶ 27) ("Notably, should P&Z reject a preliminary plan, the P&Z Code does *not* provide for any immediate appeal and/or review,

---

[1] The Johnstown Charter can be retrieved at https://www.amlegal.com/codes/client/johnstown_oh/

including by Council. Thus, under the plain language of the P&Z Code, unless a preliminary plan for a PUD is approval by P&Z, it can never and will never be considered by Council.") (emphasis in original). Plaintiffs allege that when they submitted their PUD application, the text of Section 1179.02 of the Johnstown Ordinances contained the following:

> At its next regularly scheduled meeting the Planning and Zoning Commission shall review the preliminary development plan and application to determine if it is consistent with the intent and purpose of this Zoning Ordinance; whether the proposed development advances the general welfare of the community and neighborhood; and whether the benefits, combination of various land uses, and the surrounding area justify the deviation from standard district and shall approve in principle with modifications, or reject the application. **Approval** in principle with modification **shall be necessary before an applicant may submit a final development plan**. Approval in principle shall not be construed to endorse a precise location of uses, configuration of parcels or engineering feasibility.

(*Id*. at ¶ 26) (emphasis supplied by Plaintiffs). This allegation and the difference in statutory language is critical because the crux of Plaintiffs' Complaint is that the Commission's ultimate power to reject applications without review from the Council constituted an unconstitutional delegation of legislative power.

Plaintiffs allegedly spent nearly 18 months preparing and planning their PUD application. (*Id*. at ¶ 28). This process included soliciting feedback from the Commission, introducing the selected building partner for the PUD, and hosting a town-hall style meeting to share information with, and answer questions from, area residents. (*Id*. at ¶¶ 29–34). On July 31, 2018, Plaintiffs submitted their PUD application accompanied by a fee of $26,450. (*Id*. at ¶ 36). Following this meeting, Plaintiffs revised their application based on the July 31st meeting and accompanying feedback and submitted the revised application. (*Id*. at ¶ 37). The Commission considered the PUD application at their August 28, 2018 meeting, and on September 28, 2018, the Commission convened a special meeting for final consideration of the PUD application. (*Id*. at ¶¶ 38–39). At this special meeting, the Commission voted to reject the PUD

3

application. (*Id*. at ¶ 40). The Commission stated that the PUD application did not "advance the general welfare" of Johnstown so as to allow the Plaintiffs to continue with the application process. (*Id*.).

Because, as Plaintiffs allege, the Johnstown Ordinances did not provide a mechanism for review, this decision by the Commission was final. (*Id*. at ¶ 42). Plaintiffs allege that the "rezoning of property is a legislative act" and thus, the Commission's decision to reject the PUD Application "amounted to improper, unlawful, and unreviewable legislative action taken by a non-elected, unaccountable administrative body." (*Id*. at ¶ 43). Plaintiffs further claim that "the PUD ordinance on its face subjects applicants to the whims and tastes of unelected and unaccountable residents of Johnstown compromising [the Commission] without establishing any discernible, specific or intelligible standards to guide the rezoning of property into a planned unit development or providing meaningful review." (*Id*. at ¶ 44). The Court turns to these claims now.

## II. STANDARD OF REVIEW

Defendant brings this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiffs have failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v.*

*Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Plaintiffs bring two claims against Johnstown. First, Plaintiffs allege that Johnstown's ordinance allowing the Commission to unilaterally reject PUD applications was a violation of due process under the United States Constitution. (Doc. 1, Compl. at ¶ 45–59). Second, Plaintiffs allege that the ordinance violates the Ohio Constitution by impermissibly delegating legislative authority to private individuals. (*Id.* at ¶¶ 60–72).

**A.     Non-Delegation Doctrine and Due Process Confusion**

First, the Court will venture to clarify a perceived misunderstanding between the parties concerning the bases on which Plaintiffs bring their present claims. In the Complaint, Plaintiffs refer to their United States Constitutional claim as a "Violation of Due Process Through Unconstitutional Delegation of Legislative Authority." (Doc. 1, Compl. at 9). At first glance, it appears that Plaintiffs are bringing a non-delegation doctrine claim against Johnstown. However, Plaintiffs are really alleging a due process violation. This confusion between the parties is apparent from the briefing. (*See* Doc. 8, Response at 8–9) ("Johnstown purports that Plaintiffs' unlawful delegation claim simply 'does not exist' as an 'independent federal constitutional doctrine…[h]ere, Plaintiffs' claim is not based on the separation of powers doctrine but, as noted, on the Due Process Clause."). While the confusion is understandable given

5

that the term "delegation" is used in both non-delegation jurisprudence and due process jurisprudence, it is important to keep these two strands of case law separate.

The non-delegation doctrine refers to a restriction on the legislature's ability to delegate their work to a non-elected entity or individual due to separation of powers concerns. *United Beverage Co., Inc. v. Ind. Alcoholic Beverage Comm'n*, 760 F.2d 155, 157 (7th Cir. 1985) ("The traditional concept of unlawful delegation of legislative authority by the United States Congress. . . is not based on the idea of due process of law in the Fifth Amendment (taken over and applied against the states in the Fourteenth Amendment), but on the constitutional separation of powers."). In other words, non-delegation prevents an executive branch agency from performing duties that the legislative branch ought to be performing by reason of the roles prescribed in the Constitution.

On the other hand, due process is a restriction of the government's power to limit certain activities of private citizens without first satisfying certain protections (either procedural or substantive protections). The confusion with the non-delegation doctrine arises because the government can violate due process when it delegates authority to private parties with no procedural protections in place. *See United Beverage Co.*, at 159 ("Delegation can violate due process in a quite elementary sense. If the state delegated to a mob the decision whether to punish a person for crime, there would be no doubt that due process had been violated."). But make no mistake, those cases are not about the separation of powers in our government, they are about the lack of process protecting individual liberty or property. *See id*. ("notice that the issue is not too much delegation, but delegation to the wrong body: delegation of judicial decision-making, for example, to people who are not judges"). Put a different way, due process is about fairness, while non-delegation is about allocation of power. Alexander Volokh, *The New Private-Regulation Skepticism: Due Process, Non-Delegation, and Antitrust Challenges*, 37 HARV. J.L. & PUB. POL'Y 931, 974 (2014).

Here, Plaintiffs claims fall squarely into the due process category. While they allege that "Johnstown has unconstitutionally delegated its legislative authority to [the Commission]" the claim is about the lack of procedural protections caused by this delegation, not the delegation of authority itself. Thus, this Court will analyze Plaintiffs' claims under the due process doctrine.

For argument sake, even if this Court construed Plaintiffs' claims as non-delegation claims, the claims would necessarily fail. Non-delegation is a federal matter, not a state one. *See United Beverage Co.*, 760 F.2d 155, 159 (7th Cir. 1985) ("there is no independent federal constitutional doctrine of excessive delegation of state legislative power"); *Geo-Tech Reclamation Industries, Inc. v. Hamrick*, 886 F.2d 662, 666 n.2 (4th Cir. 1989) ("We do not suggest that federal law places any general restraints on the delegation of state power to state administrators…"). While it is true that states may have their own non-delegation requirements pursuant to their state constitution, this Court is not required to consider matters of state law unless there is a federal claim that must also be decided. *Wayne Watson Enterprises, LLC v. City of Cambridge*, 243 F. Supp. 3d 908, 928–29 (S.D. Ohio 2017) (Marbley, J.) (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014) ("The Sixth Circuit routinely emphasizes this provision in holding that 'a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.'")). For that reason, even if Plaintiffs' claims were based on the non-delegation doctrine, the claims would be meritless in front of this Court.

**B.    Due Process Concerns**

There are normally two types due process claims: procedural due process and substantive due process. Procedural due process is "traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Substantive due process is "'[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" *Pearson v.*

7

*City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992) (quoting Comment, *Developments in the Law— The Constitution and the Family,* 93 Harv. L. Rev. 1156, 1166 (1980)). However, Plaintiffs have made it clear that they are not asserting a claim under either of these well-known due process doctrines. (Doc. 8, Response at 10). In their Response, Plaintiffs stated:

> Plaintiffs have <u>not</u> asserted an entitlement or expectancy to the rezoning of their property as a PUD, with Johnstown's refusal to do so a deprivation of their due process; rather, Plaintiffs allege that ***the manner in which Johnstown delegated the legislative power*** to make zoning decision [sic] to the P&Z Commission violates the U.S. Constitution.

(*Id.*) (emphasis in original). Plaintiffs allegations arise under a lesser known strand of case law, one that prevents the delegation of legislative authority to purely private citizens with no discernable standard which the private citizens must follow. *See generally*, Volokh, *supra*.

Plaintiffs cite to two Supreme Court cases in support of their argument. In the first case, *Eubank v. Richmond*, 226 U.S. 137, (1912), Richmond enacted a city ordinance that allowed purely private property owners to help establish building setback lines. 226 U.S. at 141–42. Upon the vote of two-thirds of the property owners abutting any street, Richmond would be required to establish a building line. *Id.* at 141. The Supreme Court struck this down as unconstitutional, taking specific issue with the reality that some set of private property owners would have the opportunity to dictate what another property owner does with his or her land. *Id.* at 143. The Court stated:

> [P]art of the property owners fronting on the block determine the extent of use that other owners shall make of their lots, and against the restriction they are impotent. This we emphasize. One set of owners determines not only the extent of use, but the kind of use which another set of owners may make of their property.

*Id.* The Court further emphasized that there was no discretion on the part of the city, but rather, the private parties held all the power. *Id.* ("It leaves no discretion in the committee on streets as to whether the street line shall or shall not be established in a given case. The action of the committee is determined by two thirds of the property owners."). Lastly, the Court was concerned that there were no standards to guide

private property owners, but rather, the statute "create[d] no standard by which the power thus given is to be exercised; in other words, the property holders who desire and have the authority to establish the line may do so solely for their own interest, or even capriciously." *Id*.

The second case Plaintiffs cite is *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116 (1928). In *Roberge*, a Seattle ordinance allowed for a private party to build a philanthropic home for youths and elderly. 278 U.S. at 118. However, the ordinance required the home builder to obtain the consent of two-thirds of the private property owners within 400 feet of the proposed home. *Id*. The Court found that this violated due process largely on the same grounds as in *Eubank*. The Court stated:

> The [ordinance] purports to give the owners of less than one-half the land within 400 feet of the proposed building authority—uncontrolled by any standard or rule prescribed by legislative action—to prevent the trustee from using its land for the proposed home. The superintendent is bound by the decision or inaction of such owners. There is no provision for review under the ordinance; their failure to give consent is final. They are not bound by any official duty, but are free to withhold consent for selfish reasons or arbitrarily and may subject the trustee to their will or caprice. [citation omitted]. The delegation of power so attempted is repugnant to the due process clause of the Fourteenth Amendment.

*Id*. at 121–22. The same three issues were present in both *Eubank* and *Roberge*: the ability of one private property owner to dictate how another property owner uses their land, the lack of discretion by the government body, and the lack of guidance to bind the private property owners.

*Eubank* and *Roberge* "stand for the proposition that the state may not constitutionally abdicate or surrender its power to regulate land-use to private individuals without supplying standards to govern the use of private discretion." *Schulz v. Milne*, 849 F. Supp 708, 712 (N.D. Cal. 1994). Thus, *Eubank* and *Roberge* "prohibit a municipality from making a statutory or de-facto delegation of power to private decision-makers if the municipality does not provide safeguards or standards to govern the use of private discretion." *Id*.

*Schulz* is similar to the case at hand. In *Schulz*, a property owner wished to renovate their house but needed to seek permit approval from the city first. 849 F. Supp. at 710. However, the city told the

9

plaintiff that they would "have" to submit its application to and get approval from a local neighborhood review board and an officer on the board. *Id*. at 712. The neighborhood review board was "a local citizen's group that offers comments and recommendations to the City on building projects in the Bernal Heights neighborhood." *Id*. at 709. Further, the city represented to the plaintiffs that if they received the approval of the local review board, then the city would approve the application. *Id*. at 712. On these facts, the court found that the plaintiff had asserted a claim pursuant to *Eubank* and *Roberge* because the "facts create an inference that [the] [c]ity simply 'rubber stamped' the decisions of the [local review board] and [the] [c]ity did not actually use its public discretion to check the [local review board's] use of its private discretion." *Id*. at 712–13.

Finally, it is helpful for this Court to examine one more case that Plaintiffs rely on, *Center for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 3d 639 (S.D. Ohio 2016) (Graham, J.). In *Powell Crossing*, the City of Powell adopted an amendment to its charter that allowed for a commission of privately citizens representing five home owners associations to create a comprehensive zoning plan for the city. 173 F. Supp. 3d at 648–52. This Court struck down that amendment as unconstitutional. *Id*. at 675. Following similar logic, this Court reasoned that this was an unconstitutional delegation of power to private parties because the private parties' decisions were binding, the parties lacked "discernible standards," and the private parties "directly represent the interests of area homeowners' associations." *Id*. at 677–78.

From these cases it can be summarized that "a legislative body may not constitutionally delegate to private parties the power to determine the nature of rights to property in which other individuals have a property interest, without supplying standards to guide the private parties' discretion." *Gen. Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1148, 1455 (2d Cir. 1991). This kind of "standardless

10

delegation of power to a limited group of property owners" violates the due process requirement of the Fourteenth Amendment. *City of Eastlake v. Forest City Enterprises, Inc.* 426 U.S. 668, 678 (1976).

Based on the aforementioned caselaw, the Court must carefully consider whether Johnstown's delegation in this case provided sufficient standards or does it violate due process. Here, the Commission is comprised of five individuals who are appointed to the Commission by the City Council. Johnstown Charter, Sections 7.02(b); 7.03(a). They are appointed for four-year terms. *Id*. at Section 7.03(a). Further, the City Council has the authority to appoint and remove members of the Commission. *Id*. at Section 7.02(b). Thus, if the City Council so desired, they could remove a member of the Commission. The Commission is therefore accountable to an elected governing body.

In *Eubank* and *Roberge* there were no standards by which the private parties had to follow—they simply could make their decision based on their own whims. Here, the Commission was to consider: "if [the development plan and application] is consistent with the intent and purpose of this Zoning Ordinance; whether the proposed development advances the general welfare of the community and neighborhood; and whether the benefits, combination of various land uses, and the surrounding area justify the deviation from standard district." Johnstown Ordinances, Section 1179.02.

Plaintiffs argue that these standards are vague and cannot be considered a discernable standard. (Doc. 8, Response at 6–7). Plaintiffs refer to the standards set forth in *Powell Crossing* to support its argument. *Id*. at 6. In *Powell Crossing*, the private parties were to consider "the current state of the Powell community's character and identity in light of current socioeconomic conditions." *Powell Crossing*, 173 F. Supp. at 678. Further, the private parties were to take into account the "'needs and desires" of Powell residents" so as to preserve the "natural, cultural, and visual elements" of the town to balance the "residential and non-residential land use." *Id*. Judge Graham found that those standards "are not specific

11

standards by which the Commission must act, but rather are sweeping areas of concern for which the Amendment leaves the Commission with full discretion to formulate policy…" *Id*. at 678.

This Court agrees with Judge Graham's reasoning above and Plaintiffs' assessment of the standards the Commission must abide by. The standards set forth in the Johnstown Ordinances are also vague and not discernable standards to ensure due process. For example, the first standard that the Commission must meet is whether the PUD Application "is consistent with the intent and purpose of this Zoning Ordinance." This standard is very broad. The Zoning Ordinance states:

> (b)　　The Commission shall base its recommendation on the following criteria:
>
> (1)　　The streets and thoroughfares proposed are suitable and adequate to carry anticipated traffic, and increased densities will not generate traffic in such amounts as to overload the street network outside the PUD;
> (2)　　Any exception from standard district requirements is warranted by the design and other amenities incorporated in the final development plan;
> (3)　　The area surrounding such development can be planned and zoned in coordination and substantial compatibility with the PUD;
> (4)　　The existing and proposed utility services are adequate for the population densities and nonresidential uses proposed;
> (5)　　The proposed development is consistent with the intent and purpose of this Zoning Ordinance;
> (6)　　The proposed development advances the general welfare of the community and neighborhood;
> (7)　　The benefits, combination of various land uses, and the surrounding area justify the deviation from standard district.

Johnstown Ordinances, Section 1179.02(b)(1)–(7). Additionally, Johnstown's delegation to the Commission to decide whether a proposed PUD "advances the general welfare of the community and neighborhood" is not a discernible standard. Court have recognized that the term general welfare is too vague to provide any standard for decision-making. *See Tighe v. Osborne*, 149 Md 349 (1925) (court held "general welfare" was too ambiguous for a zoning ordinance to pass constitutional muster, as it improperly delegated legislative power to an unelected body—even though the applicant had the possibility of appealing to the city court). The Court therefore agrees with Plaintiffs that the standards could be more

specific, the law does not require the best standards, they only require "standards to guide the private parties' discretion." *General Elec. Co. v. New York State Dept. of Labor*, 936 F.2d 1448, 1445 (2d Cir. 1991). The Court finds that at this stage in the proceedings, Plaintiffs have sufficiently shown that the Johnstown Ordinance does not provide enough guidance to meet that requirement. Therefore, this Court finds that Plaintiff has sufficiently alleged a claim for violation of the due process requirements of the United States Constitution.

Defendants assert that if this Court were to dismiss the federal claim in Count One, it should decline to exercise supplemental jurisdiction over the state law claim in Count Two. Defendants did not, however, move to dismiss this Count on substantive grounds. Therefore, Plaintiffs have sufficiently pled a claim for violation of due process, the state law claim based on the Ohio Constitution's prohibition on certain delegations of power remains pending as well.

### IV. CONCLUSION

For the foregoing reasons the Defendant's Motion to Dismiss is **DENIED**.

The Clerk shall remove Document 6 from the Court's pending motions list.

The parties previously participated in a mediation with mediator Donald Collins. The parties were at an impasse in part because there was a pending motion to dismiss. Now that the motion to dismiss has been resolved, the Court encourages the parties to resume settlement discussions.

**IT IS SO ORDERED.**

          */s/ George C. Smith*
          **GEORGE C. SMITH, JUDGE**
          **UNITED STATES DISTRICT COURT**