UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ANDREW L. RICE,** *et al.***,**

    **Plaintiffs,**          **:**          **Case No. 2:19-cv-504**

**v.**          **Judge Sarah D. Morrison**
         **Magistrate Judge Chelsey M. Vascura**

**VILLAGE OF JOHNSTOWN, OHIO,**
         **:**
    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on the Parties' cross-motions for summary judgment. (ECF Nos. 27, 29). For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Partial Summary Judgment.

**I. STATEMENT OF THE FACTS**

The facts here are undisputed:

Plaintiffs Andrew Rice, Mary Neda Ann Shaub, and the Parker Family Trust own an 80-acre parcel of land (the "Parcel") in Monroe Township, Ohio. (Wilcox Decl., ¶ 3, ECF No. 29-2). In 2017, Plaintiffs Wilcox Investment Group, LLC and Wilcox Communities, LLC (collectively, "Wilcox") entered into a purchase agreement to buy the Parcel, contingent on, among other things, rezoning the property. (*Id.* ¶ 4). Wilcox's plan was to create the "Concord Trails" planned unit development ("PUD"), a mix of attached condominiums, detached patio homes, and

1

single-family lots. (*Id.* ¶ 2). But instead of Monroe Township, Wilcox wanted the Concord Trails development to be located in Defendant Village of Johnstown, which is adjacent to the Parcel and Monroe Township. (*Id.*). If the Parcel was annexed into the village, Concord Trails residents would have access to Johnstown's municipal services, including its police protection and street maintenance. (Lenner Depo., pp. 104–105, ECF No. 26-1). To that end, Wilcox filed separate applications with Johnstown: one to rezone and another for annexation. (Wilcox Decl., ¶ 3, ECF No. 29-2).

### A. Rezoning

Wilcox spent "nearly two years and hundreds of thousands of dollars" working with Johnstown on the intended PUD. (*Id.* ¶ 5). This included written and oral presentations to the public and to the Village Council, Johnstown's legislative body. (*Id.* ¶ 6). However, Plaintiffs' Preliminary PUD Plan was not submitted to the Village Council. Instead, it was submitted to the Planning and Zoning Commission ("P & Z Commission"), individuals appointed by the Village Council to initially hear zoning applications. (*Id.* ¶ 7). *See* JOHNSTOWN, OHIO, CHARTER, SECTION 7.03(b).

At the time the plaintiffs were going through the process, if the P & Z Commission approved a zoning application, the application would then move forward to Johnstown's Village Council; a denial by the P & Z Commission ended the review. That is because Johnstown Ordinance 1179.02 provided that "[a]pproval in principle with modification shall be necessary before an applicant may submit a final development plan." JOHNSTOWN, OHIO, ORD. NO. 1179.02 (effective until May

2

16, 2019). In other words, preliminary approval by the P & Z Commission was a prerequisite to Village Council consideration. A denied application could not be appealed to the Village Council.

The P & Z Commission received little direction in reviewing zoning applications under Johnstown Ordinance 1179.02. The P & Z Commission was instructed to consider whether the application was "consistent with the intent and purpose of this Zoning Ordinance," the "proposed development advances the general welfare of the community and neighborhood"; and the "benefits, combinations of various land uses, and the surrounding area justify the deviation from standard district." JOHNSTOWN, OHIO, ORD. NO. 1179.02 (effective until May 16, 2019). Johnstown did not provide any other instruction. *Id.* (*See also* Lenner Depo., p. 95, ECF No. 26-1).

Plaintiffs' Preliminary PUD Plan was submitted to the P & Z Commission in July 2018 and a revised plan was submitted in September 2018. (Wilcox Decl., ¶¶ 26–29, ECF No. 30-2). On September 19, 2018, the P & Z Commission rejected Wilcox's revised Preliminary PUD Plan. (*Id.* ¶ 29). Because of that rejection, Wilcox's proposed PUD plan was never considered by the Village Council. (*Id.*).

**B.     Annexation**

In addition to P & Z Commission approval, Plaintiffs' Preliminary PUD Plan application was contingent on annexation. (Lenner Depo., pp. 87, 142, ECF No. 26-1; Pls. Ex. D, ECF No. 29-4). Plaintiffs petitioned to annex the Parcel from Monroe Township into the Village of Johnstown around the same time they submitted the

Preliminary PUD Plan to the P & Z Commission. (Wilcox Decl., ¶ 20, ECF No. 30-2). This annexation petition expired before Johnstown acted. (*Id.* ¶ 35). A second annexation petition was filed not long after. (*Id.* ¶ 36). On June 16, 2020, Johnstown's Village Council rejected the second annexation petition in a 7-0 vote. (*Id.*). Plaintiffs do not challenge the denial of their annexation petition.[1]

    C.    **Revised P & Z Commission Ordinance**

On May 16, 2019, after the filing of this action, Johnstown Ordinance 1179.02 was amended with two significant changes. JOHNSTOWN, OHIO, ORD. NO. 1179.02 (effective May 16, 2019). First, any decision on a zoning application by the P & Z Commission (approval, approval with modifications, or disapproval) will now go to the Village Council. *Id.* Second, the P & Z Commission is now provided with seven criteria it must consider in reviewing a zoning application. *Id.*

**II.    Procedural History**

On February 14, 2019, Plaintiffs filed a complaint alleging that Johnstown Ordinance 1179.02 violated Due Process under the United States Constitution (Count I) and was an impermissible delegation of legislative authority to private individuals in violation of the Ohio Constitution (Count II). (ECF No. 1). Plaintiffs seek declaratory judgment, injunctive relief, compensatory damages, attorney's fees and costs, and punitive damages.

---

[1] While Plaintiffs call the rejections of their annexation petitions "arbitrary and capricious" in heading E of the facts section of their Memo Contra, they fail to challenge the rejections in their Complaint and they do not develop any legal argument supporting this characterization. (ECF No. 30, p. 8).

Both sides moved for summary judgment (ECF Nos. 27, 29), and those Motions were fully briefed. (ECF Nos. 30, 31, 32, 33). This Court then asked the parties to brief the issue of constitutional standing. (ECF No. 34). With this supplemental briefing (ECF Nos. 35, 36), the cross-motions for summary judgment are now ripe for review.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"When parties file cross-motions for summary judgment, the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist."

*B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001). A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597–98 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## IV. ANALYSIS

"Article III standing is a jurisdictional requirement that cannot be waived, and such may be brought up at any time in the proceeding." *Zurich Ins. Co. v. Logitrans*, Inc., 297 F.3d 528, 531 (6th Cir. 2002) (citation omitted). Article III standing is a prerequisite both for a plaintiff's federal claims and his state law claims. *See Davis v. Detroit Pub. Sch. Cmty. Dist.*, No. 18-2304, 2020 U.S. App. LEXIS 35207, at *10 (6th Cir. Nov. 6, 2020) (citation omitted) (federal courts must determine whether a plaintiff has Article III standing before considering whether he has state law standing). "Once standing concerns arise—whether raised by defendants, or *sua sponte* by the Court in meeting its obligation to ensure its own jurisdiction—Plaintiffs carry the burden to establish that standing requirements are met." *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 988 (S.D. Ohio 2020) (Cole, J.) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

6

Plaintiffs must establish the following to meet the requirements of constitutional standing: "(1) that they have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, (2) that a causal link exists between the injury and the conduct complained of, . . . and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Midwest Media Prop., LLC v. Symmes Twp., Ohio*, 503 F.3d 456, 461 (6th Cir. 2007) (quotations and citations omitted). Each element of standing must be supported with the "manner and degree of evidence required at the successive stages of the litigation in the same way as any other matter on which the plaintiff bears the burden of proof." *Kolesar v. Allstate Ins. Co.*, 814 F. App'x 988, 989 (6th Cir. 2020) (citation and quotations omitted). At least one litigant must have standing for each form of relief sought. *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 406 (6th Cir. 2019) (citing *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017)).

Plaintiffs allege that Johnstown unlawfully delegated its legislative authority to the P & Z Commission and such delegation caused the denial of their Preliminary PUD Plan application for the Parcel. (ECF No. 36, p. 3). Plaintiffs seek monetary damages for this denial, as well as declaratory and injunctive relief.[2]

---

[2] Plaintiffs only challenge the ordinance as it previously existed. Accordingly, even if the plaintiffs had standing to bring their claims, which they do not, Johnstown's amendment of Ordinance 1179.02 likely mooted Plaintiffs' requests for declaratory and injunctive relief. *See Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 982 (6th Cir. 2012) (holding that request for declaratory and injunctive relief concerning unconstitutional ordinance was mooted by adoption of new ordinance following motion for summary judgment).

### A.  Injury In Fact

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation and quotations omitted). For an injury to be particularized, a plaintiff "must show that a defendant's actions have harmed the plaintiff in a personal way, not in a generalized way that equally affects everyone else." *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021) (citing *Lance v. Coffman*, 549 U.S. 437, 439 (2007)). For the injury to be concrete, the injury must be real and not abstract, meaning it is a type of injury traditionally redressed by the courts. *Id.* (citation omitted). And finally, the interest must be a legally protected one, in other words, a "right to relief if the court accepts the plaintiff's interpretation of the constitutional or statutory laws on which the complaint relies." *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89-90 (1998)).

Plaintiffs must fall under the challenged provision to be eligible for the right to relief. *Brintley v. Aeroquip Credit Union 18-2326*, 936 F.3d 489, 492 (6th Cir. 2019). Property owners within a jurisdiction's boundaries challenging a zoning ordinance meet this requirement. *See, e.g., Loesel v. City of Frankenmuth*, No. 08-11131-BC, 2009 U.S. Dist. LEXIS 25956, at *30 (E.D. Mich. Mar. 27, 2009) (holding that property owner had standing when a municipality passed a zoning ordinance that scuttled a deal with Wal-Mart). But because zoning ordinances do not go beyond a municipality's boundaries under Ohio law, those outside the boundaries

8

generally do not have standing. *See, e.g.*, *Clifton v. Vill. of Blanchester*, 964 N.E.2d 414, syllabus (Ohio 2012) ("property owner lacks standing to bring a regulatory-taking claim against a municipality when the affected property is outside the municipality's corporate limits"). *But see Moore v. City of Middletown*, 975 N.E.2d 977, syllabus (Ohio 2012) ("Property owners whose property is adjacent to property rezoned by a foreign municipality may use a declaratory-judgment action to challenge the constitutionality of the zoning action if the owner pleads that he has suffered an injury caused by rezoning that is likely to be redressed.").

Here, Plaintiffs argue that Johnstown Ordinance 1179.02 "determined how Plaintiffs may exercise their constitutional right to use their own property" to establish injury in fact. (ECF No. 36, p. 3). But that is not so. Plaintiffs' alleged injuries are injuries relating to their use of the Parcel. However, the Parcel is not in the Village of Johnstown so none of them have a legally protected interest *vis-à-vis* Johnstown Ordinance 1179.02. That ordinance simply does not apply to them. Without a right to relief, Plaintiffs failed to establish an injury in fact and lack Article III standing to bring their Due Process claim. *See Carney v. Adams*, __ U.S. __, __, 141 S.Ct. 493, 501 (2020) (recognizing the "longstanding legal doctrine preventing [courts] from providing advisory opinions at the request of one who, without other concrete injury, believes that the government is not following the law.")

9

While the Plaintiffs' failure to meet the first requirement of standing ends the analysis, the Court will address the remaining two requirements for completeness.

### B. Causality

For Plaintiffs to succeed on the second requirement of standing, their injury must be fairly traceable to the challenged conduct. *Buchholz v. Tanick*, 946 F.3d 855, 866 (6th Cir. 2020) (citation omitted). At the summary judgment stage, each link between the injury and the challenged conduct must be supported with evidence. *Ctr. for Biological Diversity v. Lueckel*, 417 F.3d 532, 539 (6th Cir. 2005). For zoning challenges, it is "substantially more difficult to meet the minimum requirements of Art. III" for a non-resident than a resident. *Warth v. Seldin*, 422 U.S. 490, 504 (1975). That is because non-residents cannot draw a line between their injury and zoning restrictions that do not apply to them. *Id.* at 506–16.

Here, Plaintiffs have a causality problem. The denied Preliminary PUD Plan must be fairly traceable to Johnstown's purportedly unlawful delegation to the P & Z Commission. While Plaintiffs assert that their injury is a violation of their Constitutional right to use their own property (ECF No. 36, p. 3), there is no evidence that the purportedly unlawful delegation to the P & Z Commission had any effect on Plaintiff's ability to develop the Parcel. Johnstown Ordinance 1179.02 does not and did not apply to the Parcel because it has at all times been located in Monroe Township. Because of that, Johnstown could not have approved the Preliminary PUD Plan regardless of the alleged unlawful delegation. Johnstown's

10

zoning ordinances and processes have no impact on how Plaintiffs develop their property. (Lenner Depo., pp. 87, 142, ECF No. 26-1; Pls. Ex. D, ECF No. 29-4).

In response, Plaintiffs make several arguments that Johnstown is responsible for their injuries because Johnstown unlawfully delegated its zoning responsibilities to the P & Z Commission. None of their arguments are successful. Again, the P & Z Commission only matters if the Parcel is in Johnstown, and Plaintiffs concede that it is not. It also does not matter if the Preliminary PUD Plan *should* have been approved under Johnstown's criteria—meeting the criteria does not create a link between the injury the unlawful act, delegation.

Plaintiffs lack standing because Johnson did not cause their alleged injury. *See Buchholz*, 946 F.3d at 866 (when an injury is the plaintiff's fault it breaks the causal chain). It was Plaintiffs' calculated risk to pursue the Preliminary PUD Plan before the Parcel was annexed into the Village. (*See* ECF No. 30, p. 9, n. 3). That this risk did not pay off was not caused by the alleged unlawful delegation to the P & Z Commission. Rather, the move was a "self-inflicted injury [that] fails the second standing prerequisite, traceability." *Buchholz*, 946 F.3d at 866.

### C. Redressability

Finally, Plaintiffs must show that "the injury will be redressed by a favorable decision." *Symmes Twp.*, 503 F.3d at 461 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff fails to meet this element if a determination on the constitutionally of an ordinance "would be of no consequence." *Vaduva v. City of Xenia*, No. 3:17-cv-41, 2018 U.S. Dist. LEXIS 149790, at *11 (S.D. Ohio Sep. 4,

11

2018) (Rose, J.). For example, in *Symmes Twp.*, the plaintiffs challenged a sign ordinance that purportedly violated the First Amendment. *Id.* However, the plaintiffs failed to comply with the unchallenged portion of the ordinance—each proposed sign was too big under the township's regulations. *Id.* Accordingly, Plaintiffs injury could not be redressed because, even if the Court invalidated the challenged ordinance, they still could not build their signs under the township's height and size limitations. *Id.* The Sixth Circuit reasoned, "plaintiffs cannot tenably show that success in challenging other regulations of the sign ordinance will redress any injury caused by these regulations." *Id.* at 462. As a result, the plaintiffs lacked standing under the "redressability" element. *Id.*

So too, here. Plaintiffs have not challenged the rejection of their annexation petitions. (ECF No. 1). Thus, Plaintiffs cannot show that successfully challenging Johnstown Ordinance 1179.02 would redress the denied Preliminary PUD Plan, because, even if this Court found that Johnstown Ordinance 1179.02 was unconstitutional, the Parcel is in Monroe Township, not Johnstown. Plaintiffs also fail to meet the third requirement for standing.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 27) and **DENIES** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 29). The Clerk is **DIRECTED** to **TERMINATE** this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

**/s/ Sarah D. Morrison**
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**