# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  April 08, 2022

Mr. Yazan Samir Ashrawi
Mr. Jeremy Michael Grayem
Frost Brown Todd
10 W. Broad Street, Suite 2300
Columbus, OH 43215

Ms. Kris Banvard
Mr. Marion H. Little Jr.
Mr. Matthew Scott Zeiger
Zeiger, Tigges & Little
41 S. High Street, Suite 3500
Columbus, OH 43215

Re:  Case No. 21-3268, *Andrew Rice, et al v. The Village of Johnstown, Ohio*
Originating Case No. : 2:19-cv-00504

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0068p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

-----------------

ANDREW L. RICE; MARY NEDA ANN SHAUB; PARKER
FAMILY TRUST; WILCOX COMMUNITIES, LLC; WILCOX
INVESTMENT GROUP, LLC,

*Plaintiffs-Appellants*,

*v.*

VILLAGE OF JOHNSTOWN, OHIO,

*Defendant-Appellee*.

No. 21-3268

-----------------

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:19-cv-00504—Sarah Daggett Morrison, District Judge.

Argued:  October 13, 2021

Decided and Filed:  April 8, 2022

Before:  SUTTON, Chief Judge; BATCHELDER and LARSEN, Circuit Judges.

-----------------

### COUNSEL

**ARGUED:**  Matthew S. Zeiger, ZEIGER, TIGGES & LITTLE LLP, Columbus, Ohio, for Appellants.  Yazan S. Ashrawi, FROST BROWN TODD LLC, Columbus, Ohio, for Appellee. **ON BRIEF:**  Matthew S. Zeiger, Marion H. Little, Jr., Kris Banvard, ZEIGER, TIGGES & LITTLE LLP, Columbus, Ohio, for Appellants.  Yazan S. Ashrawi, Jeremy M. Grayem, FROST BROWN TODD LLC, Columbus, Ohio, for Appellee.

LARSEN, J., delivered the opinion of the court in which SUTTON, C.J., joined. BATCHELDER, J. (pp. 15–27), delivered a separate opinion concurring in part and dissenting in part.

———————————

## OPINION

———————————

LARSEN, Circuit Judge.  The Rice family devised a two-part plan to annex their eighty-acre farm into the Village of Johnstown and have it zoned for a residential development.  But it was not to be.  After working for eighteen months with various Johnstown officials, the Johnstown Planning and Zoning Commission (P&Z Commission) rejected the family's application at the preliminary stage.  Unhappy with the process, the Rice family sued.  The family claimed that Johnstown had unlawfully delegated legislative authority to the P&Z Commission, violating its due process rights under the United States and Ohio Constitutions.  The family sought declaratory, injunctive, and monetary relief.

The district court was skeptical.  Because the farm was not located in Johnstown, but in adjacent Monroe Township, the court held that the Rice family lacked standing to bring its claim and granted summary judgment to the Village.  We disagree.  Whatever the merits of the claim, the Rice family has standing to bring it.  But because the Johnstown ordinance at issue has since been amended, the family's claims for declaratory and injunctive relief are moot.  Only the claim for damages survives.  Therefore, we AFFIRM in part and REVERSE in part the judgment of the district court and REMAND for further proceedings consistent with this opinion.

I.

A.

The Rice family[1] owns eighty-plus acres of vacant land in Monroe Township, Ohio.  It proposed to transform the property into a housing development called "Concord Trails" through a purchase agreement with Wilcox Communities, a local development and construction business.  But the arrangement faced two obstacles.  First, Monroe Township had zoned the property as

---

[1]Appellants are Andrew Rice, Mary Neda Ann Shaub, and the Parker family trust, members of the Rice family and owners of the farm property in this dispute, as well as Wilcox Investment Group, LLC and Wilcox Communities, LLC, the land developers. We will refer to appellants collectively as "the Rice family" unless otherwise specified.

Agricultural and R-1, and the proposed development was too dense for that zoning.  Second, the development needed access to municipal services, which only the neighboring Village of Johnstown could provide.

To overcome these hurdles, the Rice family set out to have the farm annexed into Johnstown and zoned as a "planned unit development (PUD)."  Instead of proceeding one step at a time, the Rice family began both processes simultaneously.  "[D]iscussions with Village personnel" led the family to believe that annexation would be a simple "formality" that would occur "along with" zoning.  And, in fact, it is undisputed that annexation can be pursued "concurrently" with the request for PUD zoning and "need not be completed" for zoning to be approved.  In Wilcox's experience, this was "typical practice in Ohio."  So, the Rice family began both processes at once.  It spent the next eighteen months, and hundreds of thousands of dollars, pursuing the redevelopment plan with Johnstown.  Nonetheless, both the zoning and the annexation were eventually rejected, dooming the Concord Trails project.

## B.

Johnstown's Planning and Zoning Code has a two-part process for zoning as a PUD.  *See* JOHNSTOWN, OHIO, PLANNING AND ZONING CODE §§ 1179.01–1179.04 (1985).  At the time the Rice family applied, the applicant first had to secure preliminary approval from the P&Z Commission, composed of five individuals appointed by the Village Council for four-year terms. *Id.*  Only with that approval in hand could the applicant apply for final development plan approval from the Village Council.  *Id.*  Section 1170.02 of the Planning and Zoning Code stated that the P&Z Commission's preliminary approval was "necessary before an applicant may submit a final development plan."  The Village Council had never denied a final plan once the preliminary plan had been approved.  And the P&Z Commission's preliminary decision was not appealable or reviewable.  So, the Rice family contends, this first step was necessary, sufficient, and final for zoning as a PUD.[2]  The ordinance at the time contained the following instruction to the Commission:

---

[2]The ordinance has since been changed and now states that the Commission "shall issue a preliminary recommendation" to the Council, which makes the final zoning decision.  JOHNSTOWN, OHIO, PLANNING AND ZONING CODE §§ 1179.02–1179.05 (1985) (amended 2019).

[The] Commission shall review the preliminary development plan and application to determine if it is consistent with the intent and purpose of this Zoning Ordinance; whether the proposed development advances the general welfare of the community and neighborhood; and whether the benefits, combination of various land uses, and the surrounding area justify the deviation from [a] standard district.

In June 2017, the Rice family submitted an initial concept plan to the P&Z Commission and received positive feedback. Over the next year, the family went back and forth with the P&Z Commission, receiving more positive feedback; and it held a town hall that was open to the community. Feeling optimistic, the family submitted a preliminary PUD application and paid an application fee of $26,450. Then, following a Commission meeting on July 31, 2018, the Rice family submitted a revised application, incorporating feedback on decreased density, pedestrian connectivity, and "buffer areas." The P&Z Commission met again on August 28 to review the updated application but tabled the matter. But on September 19, the Commission convened a special meeting for final consideration and voted to reject the development plan, finding that it did not "advance the general welfare" of Johnstown. Because Commission approval was required to proceed to the next stage, the denial ended the Rice family's application for zoning and the Concord Trails project.

## C.

Meanwhile, the annexation process continued. Annexation, like zoning, involved a multi-step process. First, Johnstown approved a "services resolution" stating that the Village would provide all necessary municipal services. Next, the Licking County Commissioners approved the annexation. Finally, the petition went to the Village Council for a vote. But once the Commission rejected the Rice Family's zoning application on September 19, 2018, the Village Council declined to vote. The 120-day statutory window expired in January 2019, denying the annexation petition by "pocket veto."

Still hoping for annexation, the Rice family initiated a second annexation petition in November 2019. Again, the family cleared the first two steps, but the Village Council denied the petition, this time by a 7-0 vote. As of this appeal, the Rice family has not applied again, though they are not precluded from doing so.

## II.

The Rice family sued the Village of Johnstown in the Southern District of Ohio.  The family made two claims for relief, based solely on the denial of the zoning application.  First, it alleged that Ordinance 1179.02 unlawfully delegated standardless and final legislative authority to the P&Z Commission, resulting in a denial of its Fourteenth Amendment right to due process.  Second, it alleged that the same unlawful delegation of legislative authority violated its due process rights under the Ohio Constitution.  The Rice family sought (1) a declaration that the ordinance unlawfully delegated authority to the P&Z Commission in violation of the Ohio and U.S. Constitutions, (2) an injunction against enforcement of the ordinance, and (3) compensatory damages for the fees and expenses associated with their rejected preliminary application.

The district court understandably had trouble deciphering the Rice family's claims.  While the family emphasized the "unlawful delegation of legislative power," its argument could not have been based on the federal nondelegation doctrine because there was no delegation of congressional power.  In response to the confusing complaint, Johnstown filed a motion to dismiss, arguing that the claim advanced by the Rice family—"denial of . . . due process . . . via improper delegation of municipal legislative power"—did not exist.  Johnstown argued in the alternative that if the claim sounded in procedural due process, the Rice family had no constitutionally-protected "life, liberty, or property" interest because it had no "legitimate claim of entitlement" to the approval of its building plan.  Even if the Rice family's preliminary plan had been approved by the P&Z Commission, the Village Council would have retained authority to reject the proposal.

The district court rejected Johnstown's arguments and denied the motion to dismiss.  The court decided that the Rice family's claims fell "squarely into the due process category."  But the court concluded that the claims sounded neither in procedural nor substantive due process.  Rather, the court suggested that the family's allegations arose "under a lesser-known strand of case law" that "prevents the delegation of legislative authority to purely private citizens with no discernable standard which the private citizens must follow."  The court then concluded that the standards set out in the Johnstown ordinance were sufficiently vague as to allege a violation of due process.

After discovery, Johnstown moved for summary judgment, while the Rice family moved for partial summary judgment. The district court, however, asked the parties for supplemental briefing on the issue of constitutional standing. Concluding that the Rice family lacked standing, the court granted Johnstown's motion for summary judgment and denied the family's motion for partial summary judgment. The Rice family appealed to this court.

III.

A.

We begin by clarifying the nature of the Rice family's claim. The Rice family says that its claim is based on the "unlawful delegation doctrine" of the Fourteenth Amendment's Due Process Clause. The family argues that Johnstown violated this doctrine through its "standardless delegation of legislative power to private, unelected, and unaccountable citizens to determine how others may use their property." This claim cannot be based on the nondelegation doctrine made famous in *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935), and *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935). That nondelegation doctrine is a restriction on Congress's ability to delegate the legislative authority vested in it by Article I of the U.S. Constitution and is rooted in separation of powers concerns. *See Hachem v. Holder*, 656 F.3d 430, 439 (6th Cir. 2011) (citing *Mistretta v. United States*, 488 U.S. 361, 371 (1989)). Here, there is obviously no delegation of congressional power; a local ordinance granted the P&Z Commission its authority. So, we must search elsewhere for the Rice family's federal claim.

A state may, of course, have its own nondelegation doctrine restricting the delegation of state, or even municipal, legislative authority on separation of powers grounds. *See generally In re Certified Questions from the U.S. Dist. Ct.*, 958 N.W.2d 1, 6 (Mich. 2020). And the Rice family's complaint purports to invoke such a doctrine, arising under the Ohio Constitution.[3] But that claim does not arise under federal law, so it cannot form the basis of our jurisdiction. *See United Beverage Co. v. Ind. Alcoholic Beverage Comm'n*, 760 F.2d 155, 158–59 (7th Cir. 1985) (noting that "there is no independent federal constitutional doctrine of excessive delegation of

---

[3]We take no position on the state law claims.

state legislative power"); *see also Geo-Tech Reclamation Indus., Inc. v. Hamrick*, 886 F.2d 662, 666 n.2 (4th Cir. 1989).  We search on.

Glancing back to the early twentieth century, we find the roots of yet a third nondelegation doctrine.  This one originated with a pair of little-known Supreme Court cases, *Eubank v. Richmond*, 226 U.S. 137 (1912), and *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116 (1928).  We recently acknowledged the "vital[ity]" of this obscure doctrine and treated it as a species of procedural due process, though we found no violation.  *See Kiser v. Kamdar*, 831 F.3d 784, 791 (6th Cir. 2016).  This is the doctrine that best fits the Rice family's description of its claim and the facts of this case.

In *Eubank*, the Supreme Court held that a city ordinance violated a property owner's federal due process rights by allowing the owners of two-thirds of the parcels abutting any street to determine the set-back for any new development.  226 U.S. at 143.  The Court was concerned that private property owners, with their own interests at stake, had been given total, standardless control over an important aspect of their neighbors' property.  *See id.*  Sixteen years later, in *Roberge*, the Court held that another city ordinance violated due process, this time for conditioning the construction of a "home for children or for old people" upon the written consent of two thirds of neighboring property owners.  278 U.S. at 118, 121–22.  Again, the Court worried that private parties, "uncontrolled by any standard or rule," could withhold zoning consent for selfish and arbitrary reasons.  *Id.* at 121–22.

The Court has never overruled *Eubank* or *Roberge*.  And these cases have made occasional appearances in the Court's later opinions.[4]  *See City of Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 677–78 (1976) (distinguishing *Eubank* and *Roberge*); *Stop the Beach*

---

[4]*Carter v. Carter Coal Co.*, 298 U.S. 238 (1936), might also be properly considered a *Eubank* case.  In *Carter Coal*, the Court invalidated a congressional delegation allowing producers and miners in the coal industry to fix maximum work hours.  *Id.* at 311.  This was a delegation "in its most obnoxious form," made not to presumptively disinterested officials, "but to private persons whose interests may be and often are adverse to the interests of others in the same business."  *Id.*  So, the Court found that the statute was "clearly a denial of rights safeguarded by the due process clause of the Fifth Amendment."  *Id.*  The Court referenced *Eubank* and *Roberge* to support its conclusion.  *Id.*  Thus, *Carter Coal* looks like a *Eubank* case.  But it might also fit within the more famous form of the nondelegation doctrine—the statutory delegation in *Carter Coal* came from Congress, and the Court's opinion also references *Schechter*.  *See Ass'n of Am. R.R. v. U.S. Dep't of Transp.*, 721 F.3d 666, 671 n.3 (D.C. Cir. 2013).  Teasing the two apart is unnecessary here.  Because Congress passed the statute, and delegated to a private, interested party, perhaps both the nondelegation doctrine and *Eubank* applied.

No. 21-3268          *Rice, et al. v. Village of Johnstown, Ohio*          Page 8

*Renourishment, Inc. v. Fla. Dep't of Envt'l Prot.*, 560 U.S. 702, 735 (2010) (Kennedy, J., concurring in part and concurring in the judgment).  The doctrine sometimes emerges in the circuit courts as well.  *See Kiser*, 831 F.3d at 791; *Gen. Elec. Co. v. N.Y. State Dep't of Lab.*, 936 F.2d 1448, 1455 (2d Cir. 1991) ("*Eubank* and *Roberge* remain good law today.").

Although few cases have discussed the *Eubank* doctrine, we can discern its key features. First, as a due process doctrine, its protection extends only to alleged deprivations of "life, liberty, or property."  U.S. Const. amend XIV, § 1; *see also Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").

Second, nearly all cases invoking this doctrine have involved a delegation of legislative authority to a private party.  In *Eubank* and *Roberge* themselves, local governments delegated zoning authority to private property owners.  *Eubank*, 226 U.S. at 141; *Roberge*, 278 U.S. at 118. In *Kiser*, the alleged delegee was the American Dental Association, though the claim failed because there was no delegation.  *See* 831 F.3d at 791.  Most other cases have also featured private parties as the delegee.  *See Gen. Elec. Co*, 936 F.2d at 1450 (labor organizations and employers); *Geo-Tech Reclamation*, 886 F.2d at 664 (local residents); *Boerschig v. Trans-Pecos Pipeline, LLC*, 872 F.3d 701, 702 (5th Cir. 2017) (natural gas utility); *Sandvig v. Sessions*, 315 F. Supp. 3d 1, 33 (D.D.C. 2018) (website owners).  In *Kiser*, we even referred to the claim as the "private nondelegation doctrine."  *See* 831 F.3d at 791 (citing Alexander Volokh, *The New Private-Regulation Skepticism: Due Process, Non-Delegation, and Antitrust Challenges*, 37 Harv. J.L. & Pub. Pol'y 931, 940–43 (2014)).  Only the D.C. Circuit has applied the doctrine (or its close cousin) to a "government entity" (Amtrak), and, even then, the court emphasized Amtrak's "unique" status "as a for-profit corporation."  *See Ass'n of Am. R.R v. U.S. Dep't of Transp.*, 821 F.3d 19, 23, 31 (D. C. Cir. 2016).

Third, the cases have often emphasized that the delegee acted with little or no guidance. In both *Eubank* and *Roberge*, the Court noted that the regulation by private parties was final and that there were no standards by "which the power thus given [was] to be exercised."  *Eubank*, 226 U.S. at 143–44; *accord Roberge*, 278 U.S. at 122.

Finally, the cases have shown particular concern about the delegee's self-interest. A delegee whose own interests may be affected by the proceedings might act for "selfish" or "arbitrary" reasons. *Roberge*, 278 U.S. at 122–23; *Eubank*, 226 U.S. at 144; *see also Carter Coal Co.*, 298 U.S. at 311 (finding that a delegation of regulatory power to "private persons whose interests may be and often are adverse to the interests of others in the same business" violates due process); *Gen. Elec. Co.*, 936 F.2d at 1455 (noting that when a legislative body delegates to private parties "without supplying standards," administrative decision-making becomes subject to "the whims of local taste" (quoting *Geo-Tech Reclamation*, 886 F.2d at 666)); *Ass'n of Am. R.R.*, 821 F.3d at 29 (explaining that Amtrak's "naked self-interest compromised their neutrality").

### B.

Having clarified the nature of the Rice family's claim, we now assess its standing to bring it. To establish standing at the summary judgment stage, we require "a factual showing of perceptible harm." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 566 (1992). The plaintiff cannot rest on "mere allegations," like at the pleading stage, but must "set forth" by affidavit or other evidence "specific facts" demonstrating standing's three elements. *Id.* at 561. The plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Buchholz v. Tanick*, 946 F.3d 855, 861 (6th Cir. 2020) (quoting *Lujan*, 504 U.S. at 560).

### 1.

The Rice family alleges that because of Johnstown's unconstitutional delegation to the P&Z Commission, its zoning application was subjected to a standardless and conclusive review by allegedly private parties (the Commissioners), who acted for arbitrary reasons. Whether or not the Rice family has done enough to survive summary judgment on the merits, the family has shown a procedural injury. *See Kiser*, 831 F.3d at 791 (treating a *Eubank* claim as sounding in procedural due process); *Parsons v. U.S. DOJ*, 801 F.3d 701, 713 (6th Cir. 2015) (treating a procedural due process claim as a "procedural injury" for standing purposes).

No. 21-3268          *Rice, et al. v. Village of Johnstown, Ohio*          Page 10

Of course, merely stating a procedural injury is not enough.  "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).  Instead, a plaintiff must also show that the procedures in question were "designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Lujan*, 504 U.S. at 573 n.8.

The Rice family has cleared that hurdle too.  Its procedural injury is tied to the family's economic interest in developing its property.  Such "palpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton,* 405 U.S. 727, 733 (1972).  And without the P&Z Commission's approval, the family's development plans could not proceed.  So the Rice family is no bystander, asserting a mere "interest in having the [proper] procedures observed." *Lujan*, 504 U.S. at 573 n.8.  The family's application was subject to the P&Z Commission's allegedly unconstitutional process and its outcome affected the family's ability to develop its land.  The Rice family has demonstrated injury-in-fact.

Johnstown counters, and the district court agreed, that the Rice family has suffered no injury because its land is in Monroe Township, and so Johnstown Ordinance 1179.02 "simply does not apply" to them.  We struggle to see how this could be.  The challenged ordinance sets forth the process for considering zoning applications.  And there can be no question that the Rice family's zoning application in fact ran through that process.   The family has produced uncontested evidence, moreover, that annexation by Johnstown was not a prerequisite to entering the zoning process; indeed, it was "typical" for the two processes to run concurrently.  And they attest that, as "the Village worked with us to develop the rezoning plan," it "continued to represent to us that there would be no issue with the annexation piece."  So the family has shown that the ordinance was applied to it and that the results of the proceeding could have affected the family's interests.

These facts distinguish the cases raised in the dissent.  *See Rector v. City & County of Denver*, 348 F.3d 935, 942, 945 (10th Cir. 2003) (plaintiffs lacked standing to contest parking-ticket procedure where they did not avail themselves of the procedure and admitted fault anyway); *Herrada v. City of Detroit*, 275 F.3d 553, 555, 558–59 (6th Cir. 2001) (same); *Brewer*

*v. District of Columbia*, 105 F. Supp. 3d 74, 96–98 (D.D.C. 2015) (retired teacher lacked standing to challenge reduction-in-force procedures used to terminate others).

Johnstown next argues that the Rice family was not injured because "the zoning of their Property remains the same as it had been under the Monroe Township zoning resolution." So "the Commission's rejection of the Preliminary PUD application had no effect" on the family's property. In Johnstown's view, in other words, injury-in-fact requires a change in the status quo ante. But that is not the law. If it were, then neither a woman refused public employment because of her sex, *see Dothard v. Rawlinson*, 433 U.S. 321, 323 (1977), nor a would-be law student denied admission because of his race, *see Missouri ex rel. Gaines v. Canada*, 305 U.S. 337, 342 (1938), would have standing to sue—after all, they were just as jobless and degree-less before the government's action as after. Standing does not work that way. *See Club Italia Soccer & Sports Org., Inc. v. Charter Twp.*, 470 F.3d 286, 294 (6th Cir. 2006) (plaintiff "precluded . . . from being considered for a lucrative contract" suffered "economic injury . . . sufficient to confer standing.").

Johnstown Ordinance 1179.02 was in fact applied to the Rice family, and the P&Z Commission's process affected its concrete economic interests in a "personal way." *See CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021) (citing *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam)). "When the plaintiff is an object of the challenged action 'there is ordinarily little question that the action or inaction has caused him injury.'" *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 537 (6th Cir. 2011) (quoting *Lujan*, 504 U.S. at 561–62). Nothing about this case causes us to question that basic rule.

2.

For the second element, causation, the Rice family had to show that its injury was "fairly traceable to" the allegedly unconstitutional P&Z Commission process. *Buchholz*, 946 F.3d at 861. But the "causation and redressability requirements are relaxed" for procedural injuries. *Klein v. U.S. Dep't of Energy*, 753 F.3d 576, 579 (6th Cir. 2014). That is because the stakes in most procedural-injury cases involve merely a "lost [] chance to" secure a concrete interest. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017). As a result, a litigant can

demonstrate causation "from the denial of procedural protections even if, when applied, the procedures might not result in relief." *Wright v. O'Day*, 706 F.3d 769, 772 (6th Cir. 2013); *see also Lujan*, 504 U.S. at 572 n.7 ("[O]ne living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered."). So the Rice family "need not show that but for the alleged procedural deficiency the [Commission] would have reached a different substantive result." *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 184 (D.C. Cir. 2017). Instead, it is enough to show that "the procedural step was connected to the substantive result." *Id.* The Rice family has met that standard here; its zoning application was denied through an allegedly unconstitutional process.

Johnstown protests that *two* events caused the Rice family's injury: the denial of zoning and the denial of annexation. The Rice family has not appealed annexation (though they may reapply), so Johnstown argues that the zoning process could not possibly have caused any injury. Johnstown might have had a point if the zoning and annexation denials were independent events. Then, the zoning procedures might not have been capable of affecting the family's concrete interests. *See Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 492 (6th Cir. 2019) (finding that the inaccessibility of a credit union's website did not cause the plaintiff injury because an independent "barrier imposed by Michigan law" blocked her membership in the union); *Midwest Media Prop., LLC v. Symmes Twp.*, 503 F.3d 456, 461 (6th Cir. 2007) (finding that plaintiffs lacked standing to challenge a sign ordinance on First Amendment grounds when each of their applications would have been independently barred by "size and height regulations" anyway). But the record here tells another story. After the Licking County Commissioners approved the Rice family's annexation application, it was left in the hands of the Village Council. That same Village Council had previously represented to the Rice family that, "in the event the Village does approve []zoning, the annexation can be approved contemporaneously." In fact, the family got the impression that annexation was just a "formality"; Johnstown represented to them, while working on the zoning application, that there would be "no issue" with annexation. When the P&Z Commission later denied the preliminary zoning application, the Village Council let the petition for annexation lapse, without offering an independent reason for denying annexation.

Johnstown does not claim that, if preliminary zoning approval had been granted, annexation still would have been denied.  These facts are sufficient to permit the inference that the zoning and annexation decisions were intertwined.

3.

Lastly, the redressability inquiry is straightforward here.  *See Klein*, 753 F.3d at 579.  First, "an award of nominal damages by itself can redress a past injury."  *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).  And nominal damages are frequently awarded in cases of procedural injury.  *See, e.g.*, *Carey v Piphus*, 435 U.S. 247, 248 (1978).  That alone is sufficient to confer standing.  *Uzuegbunam*, 141 S. Ct. at 796.  And second, the Rice family has requested additional monetary relief based on the fees and expenses of the application process.  Whether the Rice family's claim for monetary relief has merit or not, it satisfies the redressability requirement.  All three elements of standing being met, the district court erred by concluding that the Rice family lacked standing.

C.

Not all the Rice family's claims for relief survive, however.  Mootness is a jurisdictional question.  *Aaron v. O'Connor*, 914 F.3d 1010, 1015 (6th Cir. 2019).  So we must address it.  Mootness can be described as "the doctrine of standing set in a time frame," though it is ultimately separate from standing.  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).  A case is moot when the issues presented are "no longer live" or the "parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks omitted).  The question is not whether the Rice family's claims were redressable at the time of filing, but whether they are still redressable now.  The claims for declaratory and injunctive relief are not.

It is undisputed that Johnstown has amended Ordinance 1179.02, which established the allegedly unconstitutional delegation to the P&Z Commission.  Under the new ordinance, the P&Z Commission now issues a "preliminary recommendation of approval" to the Council, which the Council must either accept or reject.  This negates the Rice family's central complaint

about the Commission: the finality of its decisions.  The Rice family has never alleged that the PUD determinations would violate due process if made by the Village Council itself; indeed, the lack of "recourse to Johnstown's legislative body, the Village Council" is the core of its complaint.  When a request for declaratory and injunctive relief concerns an ordinance, and a new ordinance is adopted, those claims are usually moot.  *See N.Y. State Rifle & Pistol Ass'n v. City of New York,* 140 S. Ct. 1525, 1526 (2020); *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 982 (6th Cir. 2012); *Ky. Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997).  Here, we have no reason to think that Johnstown's amending of the ordinance is anything other than genuine.  *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019).  So, the Rice family's claims for equitable relief are moot.

* * *

The district court granted summary judgment on the sole ground that the Rice family lacked standing to bring its claims.  We disagree.  Our holding that the Rice family has standing, of course, does not suggest that its claims will prevail on the merits.  We remand for the district court to rule on that question in the first instance.

We AFFIRM the district court's grant of summary judgment to Johnstown on the Rice family's claims for declaratory and injunctive relief, REVERSE the grant of summary judgment to Johnstown on the Rice family's claim for monetary relief, and REMAND for further proceedings consistent with this opinion.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

ALICE M. BATCHELDER, Circuit Judge, concurring in part and dissenting in part. I agree that several of Plaintiffs' claims are moot. But I would hold that Plaintiffs lack standing to bring their procedural due process claim and would affirm the district court's grant of summary judgment to Johnstown. Therefore, I join Part III.C, but respectfully dissent from the rest of the majority opinion and judgment.

## I.

### A. Threshold Elements for a Procedural Due Process Claim

Plaintiffs insist that their procedural due process claim, or their *Eubank* claim as the majority calls it, does not require a protected property interest. Given the oddity of this procedural due process claim, we should clarify whether Plaintiffs' *Eubank* claim requires a protected property interest.

As the majority recognizes, a *Eubank* claim has its basis in the Fourteenth Amendment's Due Process Clause. Maj. Op. 9. The Due Process Clause says that no state shall "deprive any person of life, liberty, or *property*, without due process of law." U.S. Const. amend. XIV, § 1 (emphasis added). The Supreme Court has read the Due Process Clause to require a protected liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–71 (1972); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

Therefore, the threshold step for a *Eubank* claim is "to determine whether the plaintiff's interest is in fact within the Fourteenth Amendment's protection of liberty or property." *Yashon v. Hunt*, 696 F.2d 468, 470 (6th Cir. 1983) (citing *Roth*, 408 U.S. at 570–71); *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). Hence, a *Eubank* claim requires a protected interest as a threshold element.

But Plaintiffs argue that their *Eubank* claim does not require a protected property interest because such a requirement would defeat the purpose of the *Eubank* doctrine, which they

describe in their appellate brief as being to ensure that "unelected decision-makers exercise their discretion under sufficient standards." But this argument relies on the premise that a protected property interest arises only if the state does not have discretion as whether to award the benefit.

I am not persuaded. To be sure, a protected property interest can arise if the state must award a permit or rezoning application as a matter of course with little to no discretion. *See EJS Props.*, 698 F.3d at 856. But the avenues to obtain a protected property interest are several, broad, and open-ended. *See Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (announcing that property interests are not bound by rigid, technical forms). Any "legitimate claim of entitlement," *Roth*, 408 U.S. at 577, or "justifiable expectation" in receiving a benefit will do, *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 352 (6th Cir. 2010) (quotation marks omitted). For example, a property owner can have a protected property interest "in a discretionary benefit, such as a re-zoning ordinance, after it is conferred." *EJS Props.*, 698 F.3d at 856. A property owner seeking a building permit can have a protected property interest "in the existing zoning classification of the property." *Id.* A business owner can have a protected property interest in the continued operation of the business. *See Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Even in the absence of a mandatory legal provision, a protected property interest can arise through "words or conduct" that create a legal "obligation." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 411 (6th Cir. 2002).

In all of these examples, requiring a protected property interest would not defeat the purpose of the *Eubank* doctrine. If a party can show a legitimate entitlement or justified expectation, and that an unconstitutional delegation under the *Eubank* doctrine deprived the party of that entitlement or expectation, the party would be entitled to relief. Here, Plaintiffs may find it more difficult to establish a protected property interest, but difficulty does not justify doing away with a threshold requirement for a procedural due process claim.

### B. The Elements of a *Eubank* Claim

Only when the plaintiff has established a protected property interest do we determine whether the state afforded adequate procedural rights before depriving the plaintiff of this protected property interest. *See Warren v. City of Athens, Ohio*, 411 F.3d 697, 709 (6th Cir.

2005).  The *Eubank* doctrine is just one of several ways to determine whether the state afforded an adequate process.

As I read it, the majority opinion organizes the *Eubank* doctrine into three separate elements.  *See* Maj. Op. at 9–10.  For the first element, there must be a delegation of legislative authority to a private party.  *Id.* at 9–10.  For the second element, the private party must have final say and act with little to no guidance or standards.  *Id.* at 10.  For the third element, the private party must have interests that "may be affected by the proceedings," or "might act for selfish or arbitrary reasons."  *Id.* at 10 (quotation marks omitted).

The *Eubank* doctrine's seminal cases featured all three elements.  In *Eubank* itself, for example, the Supreme Court applied the doctrine to protect private property owners from an unfair and standardless process that empowered other private property owners, "solely for their own interest, or even capriciously," to determine the kind of use to which the former could put their property.  *Eubank v. City of Richmond*, 226 U.S. 137, 143–44 (1912).  Without adequate guidance or standards, self-interested private parties could use state power to deprive owners of property interests for selfish or arbitrary reasons.  *Wash. ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 122 (1928).  Thus, the risk that interested private parties armed with coercive state power might act against the protected interests of others was "repugnant to the due process clause of the Fourteenth Amendment."  *Id.* (citations omitted).

The D.C. Circuit appears to be the only court that has applied the *Eubank* doctrine to a regulatory body, *see Ass'n of Am. R.R. v. U.S. Dep't of Transp.*, 821 F.3d 19, 23, 31 (D.C. Cir. 2016).  But this was a narrow exception to the private-party requirement and applies only if the plaintiff can show that the regulatory body's "naked self-interest compromised their neutrality." *Id.* at 29.  Indeed, the Supreme Court has held that delegations to "presumptively disinterested" officials or official bodies differ from delegations to private parties "whose interests may be and often are adverse to the interests of others."  *Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936).

Therefore, an actionable *Eubank* claim must show the three threshold elements common to all procedural due process claims: (1) a protected property or liberty interest; (2) the plaintiff

was deprived of this protected interest; and (3) the state provided an inadequate process prior to depriving the plaintiff of this protected interest.  *See Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).  And to show an inadequate process under the *Eubank* doctrine, the plaintiff must show (1) a delegation of legislative authority to a private party; and (2) the private party acted with little to no guidance; and (3) the private party had interests affected by the procedure.

Plaintiffs have not alleged or adduced facts that establish a protected property or liberty interest.  Johnstown's Planning and Zoning Code grants guided discretion to the P&Z Commission to approve the development plan and rezoning application.  Nothing in Johnstown's Planning and Zoning Code requires approval of the plan and application as a matter of course.  *See* Johnstown, Ohio, Planning and Zoning Code §§ 1179.01–1179.04 (1985).[1]  Furthermore, nothing in the record suggests that Johnstown promised Plaintiffs success in getting their property rezoned.  In fact, a letter from Johnstown to Plaintiffs made it clear that Johnstown cannot guarantee approval of their rezoning application or their annexation petition.

The challenged ordinance also afforded Plaintiffs an adequate procedure under the *Eubank* doctrine.  First, the Johnstown Planning and Zoning Code did not delegate legislative authority to a private party.  Rather, the Village Council appoints members to the P&Z Commission, a regulatory body that is "presumptively disinterested," *Carter Coal*, 298 U.S. at 311.  *See* Johnstown Charter, §§ 7.02(b), 7.03(a).  Without evidence that self-interest compromised the P&Z Commission's presumptive neutrality, Plaintiffs face an uphill battle in establishing their *Eubank* claim against a regulatory body.  Finally, the Johnstown Planning and Zoning Code provides standards that guide the P&Z Commission's review of rezoning applications.  *See* Johnstown, Ohio, Planning and Zoning Code § 1179.02.  This undermines any argument that the P&Z Commission acted without guidance in its review of development plans and rezoning applications.

---

[1]As the majority noted, Johnstown amended the ordinance to require that the P&Z Commission now issues "a preliminary recommendation" to the Village Council, which makes the final decision.  JOHNSTOWN, OHIO, PLANNING AND ZONING CODE §§ 1179.02–1179.05 (1985) (amended 2019).

Because the district court granted summary judgment to Johnstown on Plaintiffs' lack of standing, not on the merits of their claim, our review is limited to whether Plaintiffs had standing to bring their *Eubank* claim.  But with a better understanding of the nature and elements of a *Eubank* claim, we can better assess Plaintiffs' standing to bring it.

## II.

Plaintiffs lacked standing to bring their *Eubank* claim for two independent reasons.  First, Plaintiffs failed to establish a colorable claim.  Second, Plaintiffs failed to establish an injury-in-fact and causation because Johnstown's challenged zoning procedure did not apply to Plaintiffs' property.

### A.  Lack of a Colorable Claim

Plaintiffs' lack of colorable claim implicates the first element of standing—injury-in-fact.  An Article III injury requires the "invasion of a legally protected interest."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Foundational to establishing an injury-in-fact, the plaintiff must allege "a 'colorable' or 'arguable' claim that the defendant has invaded a legally protected interest."  *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 489 (6th Cir. 2021) (citations omitted).  In this inquiry, we must take care not to conflate standing with the merits.  *See Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 31 (1993) (per curiam).  But lack of a colorable claim could turn a failure on the merits "into a jurisdictional defect."  *CHKRS, LLC*, 984 F.3d at 489 (citations omitted); *see also Gerber v. Herskovitz*, 14 F.4th 500, 508 (6th Cir. 2021).

Black's Law Dictionary defines a colorable claim as a "plausible claim that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)."  *Claim*, *Black's Law Dictionary* (11th ed. 2019).  An implausible claim is grounds for dismissal for lack of subject-matter jurisdiction.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).  And a constitutional claim "founded completely on a mistaken reading" of the Constitution is implausible.  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).  If the legal claim is implausible, then the plaintiff lacks standing

because there is no legal interest to protect.  *See Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006).

Here, Plaintiffs do not have a colorable claim.  The problem with Plaintiffs' claim is not that they failed to establish a protected interest.  While they have certainly failed in that regard, that failure goes to the merits of their claim, not their standing to bring it.  Rather, Plaintiffs argue that their *Eubank* claim does not require a protected interest at all.  Plaintiffs' interpretation of their claim completely misreads the Constitution because it ignores the text of the Due Process Clause of the Fourteenth Amendment, contradicts well-settled law that the Supreme Court established nearly 50 years ago in *Roth*, and flouts a threshold element required for all procedural due process claims, *see Valentino*, 756 F.3d at 904.  Assertion of a procedural due process theory that does away with this well-established, threshold element cannot be the assertion of a reasonable or logical extension of current law.  For this reason alone, I would hold that Plaintiffs lacked standing.  *See Glenn*, 183 F.3d at 479 (affirming dismissal of the plaintiff's implausible constitutional claim for lack of subject matter jurisdiction); *White v. United States*, 601 F.3d 545, 555 (6th Cir. 2010) (finding that the "near frivolous" arguments for the plaintiff's constitutional claims are insufficient to confer standing).

**B.  Lack of an Injury-in-Fact and Lack of Causation**

Even if Plaintiffs asserted a colorable claim, they still do not have standing to bring it because, as the district court found, the challenged rezoning procedure of Johnstown did not apply to Plaintiffs' property.  For this basic reason, Plaintiffs have failed to establish an injury-in-fact and causation.

**1.  Injury-in-Fact**

Recall that to suffer an Article III injury, the plaintiff must establish "an invasion of a legally protected interest."  *Lujan*, 504 U.S. at 560.  To establish the invasion of a legally protected interest, "a plaintiff must show that the plaintiff has a right to relief if the court accepts the plaintiff's interpretation of the constitutional or statutory laws on which the complaint relies." *CHKRS, LLC*, 984 F.3d at 488 (citations omitted).

If we accepted Plaintiffs' theory that Johnstown's delegation of legislative authority to the P&Z Commission deprived them of a protected property interest without affording an adequate procedure, Plaintiffs would still lack a right to relief. That is so because Plaintiffs' property was and remains in Monroe Township, subject to Monroe Township's zoning ordinances. Therefore, Johnstown's rezoning procedure did not apply to Plaintiffs' property and could not change the zoning status of Plaintiffs' property even if Johnstown had approved Plaintiffs' rezoning application.

If the challenged provision does not apply to the plaintiff, then the plaintiff cannot establish an injury-in-fact and lacks standing to challenge the provision. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231–35 (1990) (finding that the plaintiffs lacked standing because the challenged ordinances did not apply to the plaintiffs); *Déjà Vu of Cincinnati, L.L.C. v. Union Tp. Bd. of Trs.*, 411 F.3d 777, 795 (6th Cir. 2005) (en banc) (finding that a plaintiff-employer lacked standing to challenge disability provisions because the provisions did not apply to the plaintiff's employees); *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 227 (6th Cir. 1995) (same); *L.M.P. on behalf of E.P. v. Sch. Bd. of Broward County, Fla.*, 879 F.3d 1274, 1281–82 (11th Cir. 2018) (finding that the plaintiffs lacked standing because the challenged school board policy did not apply to them). Here, there is no reason to depart from this established rule.

However, the majority would find that Plaintiffs have standing because Johnstown's ordinances did apply to Plaintiffs. The majority gets there by pointing out that Plaintiffs' rezoning application went through Johnstown's rezoning procedure, that Johnstown did not require annexation before an applicant could submit a rezoning application, and that it is typical practice for the rezoning and annexation processes to run together. Maj. Op., at 11–15.

But it is the legal territorial status of Plaintiffs' property that determines whether Johnstown's rezoning procedure applied to Plaintiffs, not the typical practices of property developers or whether Johnstown allows rezoning applications for properties outside its jurisdiction. Standing requires the invasion of an actual legally protected interest, not a hypothetical or hoped-for one.

The majority holds that under the relaxed standing requirements for a procedural injury, Plaintiffs suffered an injury-in-fact. *See* Maj. Op. at 11–13. But the relaxed standing requirements for a procedural injury do not save Plaintiffs from their standing deficiencies.

It is true that we relax standing requirements for procedural injuries. *See Parsons v. U.S. DOJ*, 801 F.3d 701, 712 (6th Cir. 2015). Procedural injuries do not require as much to confer standing because procedural rights do "not depend on upon the merits of a claimant's substantive assertions." *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Lujan*, 504 U.S. at 572 n.7 (finding that the plaintiff had standing to assert a procedural right "even though he cannot establish with any certainty" the desired outcome of the procedure). As the majority notes, "[w]hen the plaintiff is an object of the challenged action 'there is ordinarily little question that the action or inaction has caused him injury.'" Maj. Op. at 13 (quoting *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 537 (6th Cir. 2011) (quotation marks omitted)).

Still, the "Due Process Clause 'does not protect procedure for procedure's sake.'" *Fowler v. Benson*, 924 F.3d 247, 259 (6th Cir. 2019) (quoting *Rector v. City and County of Denver*, 348 F.3d 935, 943 (10th Cir. 2003)). That is, the procedure must not only be "designed to protect" the plaintiff's concrete interest, *Lujan*, 504 U.S. at 573 n.8, the procedure must be *able* to protect the plaintiff's concrete interest, *see Wright v. O'Day*, 706 F.3d 769, 772 (6th Cir. 2013). Therefore, if the procedure is not able to protect the plaintiff's interest, then the plaintiff cannot suffer a procedural injury. *See Morgan v. McCotter*, 365 F.3d 882, 889–90 (10th Cir. 2004) (holding that if the procedure cannot protect the plaintiff's interest, then the plaintiff did not sustain an injury through the denial of due process) (citing *Michael H. v. Gerald D.*, 491 U.S. 110, 127 n.5 (1989) (plurality opinion)).

Two cases are instructive on this principle. In *Rector*, the plaintiffs brought a procedural due process claim that challenged the adequacy of procedures provided to those who receive parking tickets. 348 F.3d at 940. But the plaintiffs did not suffer a procedural injury because they never utilized the procedures to challenge their parking tickets on the merits. Therefore, the alleged deficiencies in the city's procedures did not cause an injury "because there was nothing for [the procedures] to decide." *Id.* at 945; *see also Herrada v. City of Detroit*, 275 F.3d 553,

558 (6th Cir. 2001) (holding that the plaintiff lacked standing to challenge a procedure under the due process clause because she was never subjected to that procedure).

Another court with facts similar to those in this case held that the plaintiff lacked a procedural injury because the challenged procedures did not apply to the plaintiff. *See Brewer v. D.C.*, 105 F. Supp. 3d 74, 96–97 (D.D.C. 2015). There, the plaintiff did not suffer a procedural injury because the plaintiff was a retiree and not subject to the procedural protections for teachers. *Id.* at 97. Even if the District of Columbia did not afford adequate procedural protections to the plaintiff, the plaintiff "was neither harmed by this failure nor stands to gain from its correction." *Id.* In other words, the challenged procedures could not accomplish anything for the plaintiff because they did not apply to the plaintiff.

As in *Rector* and *Brewer*, so too here. Plaintiffs' *Eubank* claim challenges the adequacy of the Johnstown rezoning procedure. They claim that an inadequate rezoning procedure affected a procedural injury tied to an economic interest in their rezoning application. But even an inadequate procedure could not help them here because Johnstown's rezoning procedure cannot accomplish a rezoning of Plaintiffs' property.

A counterfactual scenario helps to illustrate this point. If the P&Z Commission and the Village Council had approved Plaintiffs' rezoning application, the property's zoning status would not have changed. Approval of Plaintiffs' rezoning application would have had no legal effect. As the district court found, Johnstown's zoning procedures did not legally apply to Plaintiffs' property because Johnstown did not have jurisdiction over Plaintiffs' property. Therefore, since Johnstown's rezoning procedure could not accomplish what Plaintiffs sought, they did not suffer a procedural injury. We do not protect procedure for procedure's sake.

The majority says that the facts distinguish these cases because Johnstown told Plaintiffs that "there would be no issue with the annexation piece," and that statements like this one demonstrated that the ordinance applied to Plaintiffs. Maj. Op. 12. But the legal territorial status of Plaintiffs' property determines whether the ordinance applied to Plaintiffs, not Johnstown's alleged statements. Plaintiffs' property was never within the territory of Johnstown. Therefore, the ordinance did not apply because the ordinance could not accomplish a rezoning of a property

not within its jurisdiction.  In other words, the procedure could not accomplish what Plaintiffs wanted.  Therefore, under this principle as illustrated in *Rector* and *Brewer*, Plaintiffs did not suffer a procedural injury.

Neither does this principle, properly understood, require "a change in the status quo ante" to establish an injury-in-fact.  Maj. Op. at 12–13.  A procedural injury requires that the challenged procedure *can* change the status quo ante.  But *whether* the procedure does so is irrelevant to establishing a procedural injury.  This explains why the existence of a procedural injury does not depend on whether the plaintiff's claim to the desired outcome through use of the challenged procedure has merit.  *See Lujan*, 504 U.S. at 572 n.7.  Hence, a woman claiming to have been denied public employment because of her gender has standing to challenge the law, action, or procedure which, applied to her, prevented her from obtaining employment.  *See* Maj. Op. at 12–13 (citing *Dothard v. Rawlinson*, 433 U.S. 321, 323 (1977)).  But here, the challenged procedure could not change the status quo ante for Plaintiffs.

It is true that Johnstown not only denied the requested rezoning, it also denied Plaintiffs' petition to annex their property by letting the petition lapse.  But the Village Council's allowing that petition to lapse does not mean that the challenged rezoning procedure somehow applied to Plaintiffs.  For one, at no point in time could Johnstown's rezoning procedure accomplish a rezoning of Plaintiffs' property because annexation never happened.  For another, Johnstown's ordinances do not regulate the annexation procedure in Ohio.  Rather, a series of state statutes from the Ohio Revised Code regulate annexation.  And more parties than Johnstown have a say in annexing Plaintiffs' property.

Under the annexation process that Plaintiffs utilized, property owners seeking annexation must petition the board of county commissioners in the county where the property is located.  *See* Ohio Rev. Code § 709.02.  Upon review and according to several criteria, the board of county commissioners by resolution grants or denies the petition for annexation.  *Id.* at § 709.033.  Interested parties can appeal the board's grant or denial of the petition.  *Id.*  If the commissioners grant the petition and no interested party appeals, the board of county commissioners sends the resolution to the municipality.  *Id.* at § 709.04.  The municipality must either accept or reject the resolution.  *Id.*

Whether the municipality's decision is accepted or rejected, any of the interested parties have a right to appeal it to the county court of common pleas. *Id.* at § 709.07.  Those parties include the agent for the petitioners, owners of property in the territory proposed for annexation, any township in the territory proposed for annexation, and the municipality itself.  *Id.* Furthermore, an appeal stays the final decision until after the courts affirm or reverse the decision. *Id.*

Here, while Johnstown had a say in the annexation process for Plaintiffs' property, it did not have full control of the process.  Even if Johnstown's Village Council had not let Plaintiffs' petition lapse, any of the interested parties, including Monroe Township, could have appealed, stayed the annexation, and the matter would have gone to state court.  And interested parties have utilized this statutory right to appeal annexation decisions in the past.[2]

In the end, Plaintiffs' injury-in-fact depends on too many "ifs."  If Johnstown had told Plaintiffs to file a petition to annex before rezoning, if Johnstown's Village Council had not let their petition to annex lapse, if none of the interested parties appealed their petition, and if the state courts had affirmed approval of Plaintiffs' annexation petition, then the challenged rezoning procedure would have applied to Plaintiffs.  This is a great example of the old saw: "if we had some ham we could have a ham sandwich if we had some bread." *Kardules v. City of Columbus*, 95 F.3d 1335, 1358 (6th Cir. 1996) (Batchelder, J., concurring).

For these reasons, Plaintiffs have not established an injury-in-fact and therefore, they lack standing to bring a *Eubank* claim against Johnstown.

## 2. Causation

Plaintiffs also failed to establish causation for the same reasons that they failed to establish an injury-in-fact.  To establish causation, a plaintiff must show "a causal connection between the injury and the conduct." *Lujan*, 504 U.S. at 560.  That is, "the injury has to be fairly

---

[2]*See, e.g.*, *State ex. rel. Overholser Builders, L.L.C. v. Clark Cnty. Bd. of Commrs.*, No. 2007 CA 36, 2008 WL 5104738 (Ohio Ct. App.); *In re Petition for Annexation of 368.08 Acres, More or Less, in Springfield Twp.*, 706 N.E.2d 1 (Ohio. Ct. App. 1997); *Thornton v. Salak*, Nos. 03 CA 63, 03 CA 64, 2005 WL 749821 (Ohio Ct. App.); *Concord Twp. Bd. of Trs. v. Painesville*, 822 N.E.2d 386 (Ohio Ct. App. 2004); *Washington Twp. Bd. of Trs. v. McLaughlin*, 690 N.E.2d 1348 (Ohio Ct. App. 1997).

traceable to the challenged action." *Id.* (quotation marks and alterations omitted). However, we relax the causation requirement for procedural injuries. Maj. Op. at 13 (quoting *Klein v. U.S. Dep't of Energy*, 753 F.3d 576, 579 (6th Cir. 2014)). In other words, causation does not require certainty that a plaintiff would get the desired outcome through the challenged procedure. *See Wright*, 706 F.3d at 772.

But these relaxed causation requirements are still requirements that the plaintiff must meet. *See Ctr. for Biological Diversity v. Lueckel*, 417 F.3d 532, 539 (6th Cir. 2005) ("[T]he particular nature of a case does not—and cannot—eliminate any of the 'irreducible' elements of standing . . . ." (quotation omitted)). Similar to an injury-in-fact, causation still requires that the challenged procedure can accomplish what the plaintiff sought. Therefore, if another cause blocked the plaintiff's desired outcome, then the challenged procedure did not cause the plaintiff's alleged injury. *See Kiser v. Kamdar*, 831 F.3d 784, 792 (6th Cir. 2016) (holding that the challenged procedure did not cause the plaintiff's alleged injury because another source caused the alleged injury).

Here, the legal territorial status of Plaintiffs' property blocked Johnstown's rezoning procedure from rezoning Plaintiffs' property. As in *Kamdar*, something else—Monroe Township's jurisdiction over the property—caused Plaintiffs' alleged injury, not the challenged rezoning procedure.

Further disrupting the causal connection here, Johnstown did not require Plaintiffs to file a petition to annex concurrent with their application to rezone. As the district court correctly noted, Plaintiffs chose to do both at the same time and for that reason, they caused their own injury. This self-inflicted injury disrupted the causal connection between the challenged procedure and the denial of rezoning.

"A self-inflicted injury, by definition, is not traceable to anyone but the plaintiff." *Bucholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020). A plaintiff cannot establish traceability "when an injury is 'so completely due to the [plaintiff's] own fault as to break the causal chain.'" *Id.* (quotation omitted). *Taylor v. F.D.I.C.* from the D.C. Circuit provides an instructive example for our purposes, and one cited with approval by this court. *See*

*Bucholz*, 946 F.3d at 866. In *Taylor*, two disgruntled employees quit of their own volition after their employer reassigned them to other positions. 132 F.3d 753, 767 (D.C. Cir. 1997). The employees sued seeking reinstatement. *Id.* But the plaintiffs lacked standing because their voluntary choice to quit caused an "injury that [was] in large part self-inflicted." *Id.*

Here, Plaintiffs' choices caused their own injury. As the plaintiffs in *Taylor* chose to resign, Plaintiffs here chose to apply for rezoning before their property was annexed to Johnstown. The majority points to a representation that Johnstown made in a letter to Plaintiffs stating that the annexation can be approved contemporaneous with approval of rezoning. Maj. Op. at 14. But that letter merely spelled out the "potential annexation results under different zoning outcomes." In fact, Johnstown encouraged and advised Plaintiffs to seek legal counsel "to fully understand all of the potential outcomes of annexation petitions under Ohio law." Furthermore, Johnstown emphasized that the letter "should not be interpreted as Village support for either process." Johnstown did not require Plaintiffs to petition for annexation and apply for a rezoning at the same time. In applying for both contemporaneously, they willingly subjected their rezoning application to Johnstown's rezoning procedure before their property was annexed to Johnstown. That risky choice caused their claimed injury. As the district court put it, "[t]hat this risk did not pay off was not caused by the alleged unlawful delegation to the P&Z Commission."

For these reasons, Plaintiffs failed to establish causation.

### III.

For the foregoing reasons, I would hold that Plaintiffs lack standing and affirm the district court's grant of summary judgment to Johnstown. Therefore, I agree that several of Plaintiffs' claim are moot but respectfully dissent from the rest of the majority opinion and judgment.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 21-3268

ANDREW L. RICE; MARY NEDA ANN SHAUB; PARKER
FAMILY TRUST; WILCOX COMMUNITIES, LLC;
WILCOX INVESTMENT GROUP, LLC,

     Plaintiffs - Appellants,

     v.

THE VILLAGE OF JOHNSTOWN, OHIO,

     Defendant - Appellee.

> **FILED**
> Apr 08, 2022
> DEBORAH S. HUNT, Clerk

Before:  SUTTON, Chief Judge; BATCHELDER and LARSEN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk